## STATE OF CONNECTICUT *v.* MICHAEL PIORKOWSKI
### (SC 15572)

Borden, Berdon, Norcott, Palmer and McDonald, Js.

Argued April 22—officially released September 2, 1997

*Elizabeth M. Inkster*, assistant public defender, with whom was *Joseph G. Bruckmann*, public defender, for the appellant (defendant).

*Judith Rossi*, assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan*, state's attorney, and *James Bernardi*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Michael Piorkowski, was charged with murder in violation of General Statutes § 53a-54a (a).[1] On February 16, 1993, the defendant

---

[1] General Statutes § 53a-54a provides: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

filed a motion to suppress two incriminating statements that he made to Norwalk police on October 21 and 22, 1992. On September 7, 1993, following an evidentiary hearing, the trial court denied his motion to suppress. The defendant then entered a written nolo contendere plea conditioned on the right to appeal from the trial court's denial of the motion to suppress. The defendant now appeals[2] from the judgment of the Appellate Court, which concluded that the trial court properly had denied his motion to suppress. *State* v. *Piorkowski*, 43 Conn. App. 209, 217, 682 A.2d 582 (1996). We granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that, under article first, § 8, of the Connecticut constitution,[3] the defendant's waiver of counsel regarding his October 22, 1992 statement was not rendered invalid by the fact that the waiver was made without the presence of counsel?" *State* v. *Piorkowski*, 239 Conn. 943, 686 A.2d 122 (1996). We affirm the judgment of the Appellate Court.

Our prior opinion in this case; *State* v. *Piorkowski*, 236 Conn. 388, 672 A.2d 921 (1996); sets forth the relevant factual and procedural history. "On October 21,

[2] The defendant initially appealed from the judgment of conviction to this court, pursuant to General Statutes § 51-199 (b) (3), and we transferred the case to the Appellate Court, pursuant to General Statutes § 51-199 (c). The Appellate Court concluded that the defendant's claims were not reviewable under Practice Book § 4003, which applies to appeals of conditional pleas, and it remanded the case to the trial court for further proceedings. See *State* v. *Piorkowski*, 37 Conn. App. 252, 656 A.2d 1046 (1995). This court then granted the defendant's petition for certification limited to the issue of whether the defendant's claims were entitled to appellate review. See *State* v. *Piorkowski*, 233 Conn. 909, 658 A.2d 980 (1995). Accordingly, we reversed the judgment of the Appellate Court and remanded the case to that court to consider the merits of the defendant's suppression claims. See *State* v. *Piorkowski*, 236 Conn. 388, 391, 672 A.2d 921 (1996).

[3] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

1992, the defendant was arrested for the murder of Tim Lee. He moved to suppress two statements that he had made to the police, one on October 21, 1992, and the other on October 22, 1992. With respect to the October 21 statement, the defendant asserted in his motion that it was: (1) obtained without a valid waiver of his *Miranda*[4] rights; and (2) a product of a violation of his right to a prompt arraignment under General Statutes §§ 54-1c and 54-1g.[5] With respect to the October 22 statement, the defendant asserted that it was: (1) a fruit of his illegal interrogation on October 21; and (2) independently inadmissible because it was the product of a violation of his right to counsel under article first, § 8, of the Connecticut constitution, that had attached at his arraignment on October 21.

"Following an evidentiary hearing on the defendant's motion to suppress, the trial court found the following facts. After having been arrested by the Norwalk police department on drug charges in early 1992, the defendant became a confidential informant for the Norwalk police, working primarily with Detective James Saraceni. The defendant informed the police that Lee was a marijuana dealer, but in September, 1992, when Saraceni

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] General Statutes § 54-1c provides: "Admissibility of confession. Any admission, confession or statement, written or oral, obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g, or who has not been informed of his rights as provided by section 54-1b or section 54-64b, shall be inadmissible."

General Statutes § 54-1g provides in relevant part: "Time of arraignment. Violations of protective orders. (a) Any arrested person who is not released sooner or who is charged with a family violence crime as defined in section 46b-38a or a violation of section 53a-181c, 53a-181d or 53a-181e shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed. If an arrested person is hospitalized, or has escaped or is otherwise incapacitated, the person shall be presented, if practicable, to the first regular sitting after return to police custody. . . ."

attempted to use the defendant in an investigation of Lee, the defendant told Saraceni that Lee had left town.

"On approximately October 10, 1992, Lee's body was discovered in New Jersey. In the early morning of October 20, 1992, Norwalk Detective Robert DeLallo learned that Christine Thompson, a friend of Lee, had given New Jersey police a statement implicating the defendant in Lee's murder. At approximately 7:30 a.m. on October 20, DeLallo and other officers located the defendant in Norwalk and, during a frisk of the defendant for weapons, found drugs and drug paraphernalia on his person. The police arrested the defendant on drug charges, orally advised him of his *Miranda* rights, and brought him to the Norwalk police station at approximately 8 a.m.

"The defendant was not presented in court on the drug charges on October 20, but was held in the police department lockup while the police continued to investigate Lee's murder. At approximately 11 p.m., on October 20, the police secured an arrest warrant charging the defendant with Lee's murder. At approximately midnight on October 21, Saraceni and Detective Nelson Alicia awakened the defendant in his lockup cell. The defendant indicated that he wanted to talk with Saraceni, after which the detectives took the defendant to an interview room, where Saraceni informed him that the police had an arrest warrant for the defendant on a murder charge. Saraceni told the defendant that he would talk to him only after giving him the *Miranda* warnings and having him fill out a waiver of rights form. Saraceni read the waiver of rights form to the defendant, who did not sign the form. Saraceni then interrogated the defendant in Alicia's presence. During the interrogation, the defendant spoke freely, giving a detailed statement implicating himself in Lee's murder.

"The detectives concluded their interrogation of the defendant at approximately 2 a.m. on October 21, 1992.

Later that day, approximately twenty-six hours after his arrest on the drug charges, the defendant was arraigned in geographical area number twenty of the Superior Court on both the drug and the murder charges; that court had been in session on October 20. A public defender was appointed to represent the defendant on both charges.

"At approximately 10:30 p.m. on October 21, DeLallo and Detective Charles Chrzanowski went to the home of Denise Van Valen, with whom the defendant lived, to ascertain whether she had any information regarding the murder of Lee. While they were in Van Valen's home, the defendant called her from the Bridgeport correctional center. Van Valen told the defendant that the detectives were there, and asked him if he wanted to talk to DeLallo. The defendant indicated that he did, and she handed the telephone to DeLallo. When the defendant asked DeLallo to come to the jail to speak to him, DeLallo told the defendant that he would try to see him at the jail the next day. When Van Valen visited the defendant at the jail on October 22, she learned that DeLallo had not yet visited the defendant. Later that day Van Valen called DeLallo and asked him why he had not yet visited the defendant.

"Although DeLallo was aware that the defendant was represented by an attorney on the murder charge, no call was placed to the public defender assigned to the defendant's case. After Van Valen's call to him on October 22, DeLallo spoke to assistant state's attorney James Bernardi and state's attorney's inspector Phil O'Grady, in order to determine whether he could appropriately interview the defendant at the jail. Bernardi and O'Grady advised DeLallo that, if the defendant had initiated the contact with him and had requested to speak with him, it was permissible to interview him regarding the murder charge. Having obtained approval from the state's attorney's office, DeLallo and Alicia visited the

defendant at the jail on the evening of October 22. Neither the detectives nor the state's attorney's office informed the defendant's counsel of the detectives' intention to interview the defendant. The detectives read him a *Miranda* rights and waiver form, which he initialed and signed. They then interviewed him about the Lee murder, and he gave another oral statement.

"With respect to the defendant's motion to suppress his statements to the police, the trial court concluded that: (1) although the defendant had not signed a waiver of rights form, he had nonetheless knowingly and intelligently waived his *Miranda* rights prior to making a statement on October 21; (2) the defendant had been timely arraigned because §§ 54-1c and 54-1g require only that a suspect be arraigned no later than the day following his arrest; (3) because the defendant had validly waived his *Miranda* rights on October 21, his statement that day had not rendered his statement on October 22 invalid; and (4) the defendant's statement on October 22 did not violate his right to counsel under article first, § 8, of the state constitution because our cases do not require that counsel be present when a suspect waives his right to counsel.

"Having rejected the defendant's claims for suppression of both his October 21 and October 22 statements, the trial court denied the defendant's motion to suppress. Thereafter, the state and the defendant appeared before the trial court, and the defendant entered a conditional plea of nolo contendere to the charge of murder pursuant to [General Statutes] § 54-94a. . . .[6] [T]he

[6] General Statutes § 54-94a provides: "Conditional nolo contendere plea. Appeal of denial of motion to suppress or dismiss. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue

court canvassed the defendant, he entered his conditional plea, and the court accepted the plea." (Citations omitted.) *State* v. *Piorkowski*, supra, 236 Conn. 391–97.

In his argument to the Appellate Court, the defendant claimed that the trial court should have granted his motion to suppress his October 22 statement because the police obtained the statement in the absence of his appointed attorney and thereby violated his right to counsel under article first, § 8, of the Connecticut constitution.[7] *State* v. *Piorkowski*, supra, 43 Conn. App. 211. The defendant urged the Appellate Court to adopt a per se rule under the Connecticut constitution requiring the presence of counsel whenever a defendant waives his right to have counsel present. Id., 218–19. Discussing the defendant's request, the Appellate Court noted that this court, in *State* v. *Jones*, 205 Conn. 638, 534 A.2d 1199 (1987), had declined to "adopt a bright line rule [requiring] that once the right to counsel attaches, there can be no valid waiver of that right without the presence of counsel." *State* v. *Piorkowski*, supra, 43 Conn. App. 220. Consequently, the Appellate Court reasoned that it could not adopt such a rule. Id. The Appellate Court therefore rejected the defendant's claim and concluded that "where the defendant, after being arraigned and in the absence of counsel, initiated the police interview, waived his *Miranda* rights, and gave a statement to a police officer, there was no violation of his state

to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[7] The defendant also claimed that his October 21, 1992 statement should be suppressed pursuant to § 54-1c because it was obtained in violation of the prompt arraignment requirements of § 54-1g. The Appellate Court affirmed the denial of the defendant's motion to suppress this statement. Because we did not certify this issue, we do not review the Appellate Court's affirmance regarding the October 21 statement.

constitutional right to counsel." Id., 221. This certified appeal followed.

On appeal, the defendant reasserts his claim that his October 22 statement was obtained in violation of his right to counsel under article first, § 8, of the Connecticut constitution, and that his waiver of the right to counsel was invalid under the state constitution because it was made in the absence of his counsel. He also contends that our state constitution requires the adoption of a per se rule mandating that, once the right to counsel has attached, any waiver of that right is deemed invalid unless made in the presence of counsel. We decline to adopt the per se rule advanced by the defendant, and we conclude that article first, § 8, of the Connecticut constitution does not require that the defendant's counsel be present for a valid waiver in cases in which the defendant has: (1) initiated contact with the police; (2) been advised of his *Miranda* rights before making the incriminating statements; and (3) knowingly and intelligently waived his right to counsel.

The state argues that our holding in *State* v. *Jones*, supra, 205 Conn. 638, a case factually similar to the present case, is dispositive of the issue presented to this court. In *Jones*, the defendant claimed that his right to counsel under the federal and state constitutions was violated when the trial court refused to suppress his statements made to police regarding the homicide with which he had been charged. The defendant made the statements after counsel had been appointed at his arraignment. After the defendant initiated the contact with the police by telephoning a detective to request a jailhouse visit, the detective then sought advice from the prosecutor regarding the propriety of the requested visit. Upon arriving at the jail, the detective again read the defendant his *Miranda* rights before any conversation began. Id., 644–46.

In *Jones*, we held that the defendant had knowingly, intelligently and voluntarily waived his sixth amendment right under the federal constitution when he initiated the police visit to the jail and made the resulting confession. Id., 651. Although the defendant in *Jones* also claimed that he was denied his state constitutional right to counsel, he did not provide any analysis under the state constitution other than to mention "Connecticut's long record of according counsel to indigent criminal defendants . . . ." Id., 641–42 n.3. Although we limited our holding to the narrow circumstances of that case, we noted that "the conduct of the defendant and the police, [were] such that the rights claimed to have been violated were 'scrupulously honored' under even a more liberal standard than that required by the United States constitution." Id.

We agree with the defendant that, when we addressed the defendant's state constitutional claim in *Jones*, we did so without the benefit of full briefing or analysis of the issue based on the now familiar factors articulated in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). Unlike *Jones*, this appeal presents us with the opportunity to analyze thoroughly the contours of the right to counsel under article first, § 8, of our state constitution.

It is well established that "[i]n construing the contours of our state constitution, we must exercise our authority with great restraint in pursuit of reaching reasoned and principled results. . . . To guide our inquiry, we have articulated six tools of analysis that should be considered to the extent applicable. . . . These factors are: (1) the text of the constitutional provisions at issue; (2) holdings and dicta of this court, and the Appellate Court; (3) federal precedent; (4) sister state decisions; (5) the historical approach; and (6)

contemporary economic and sociological, or public policy, considerations." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Ganim*, 233 Conn. 557, 581, 660 A.2d 742 (1995).

Article first, § 8, of the Connecticut constitution, which is textually similar to the sixth amendment[8] of the federal constitution, provides in relevant part that "[i]n all criminal prosecutions, the accused shall have the right to be heard by himself and by counsel . . . ." The right to counsel under the sixth amendment of the federal constitution protects a criminal defendant at critical stages of the proceedings from adversarial government agents after "the adverse positions of government and defendant have solidified" with respect to a particular alleged crime. *McNeil* v. *Wisconsin*, 501 U.S. 171, 177–78, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991). This right does not attach until "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (Internal quotation marks omitted.) *United States* v. *Gouveia*, 467 U.S. 180, 188, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984).

Although our state constitution may afford protections and rights beyond those set by the federal constitution, case law interpreting the right to counsel under the federal constitution provides us with guidance in determining the contours of the state constitutional counterpart. In *Michigan* v. *Jackson*, 475 U.S. 625, 636, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), the United States Supreme Court established a strict rule providing that any waiver of the sixth amendment right to counsel in a *police initiated* discussion is presumed invalid. The Supreme Court since has ruled that the sixth

---

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

amendment right to counsel may be waived by an accused if the police do not initiate the contact with the accused and if the waiver is knowing, voluntary and intelligent. *Patterson* v. *Illinois*, 487 U.S. 285, 299–300, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988). An accused may waive the right to counsel under the sixth amendment when: (1) counsel is present or personally gives permission for the police to question the defendant; or (2) the accused himself initiates the communication. See *Michigan* v. *Harvey*, 494 U.S. 344, 352, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990) (sixth amendment does not prevent defendant represented by counsel from voluntarily initiating communication with police in absence of counsel); *United States* v. *Mills*, 1 F.3d 414, 418 (6th Cir. 1993) (*Jackson* rule applied only to police initiated conversation); *Murphy* v. *Holland*, 845 F.2d 83, 85 (4th Cir. 1988) (where defendant represented by counsel initiated communication and waived rights, confession admissible; *Jackson* rule suppressing police initiated confession, distinguished); *Smith* v. *Dugger*, 840 F.2d 787, 794 (11th Cir. 1988), cert. denied, 494 U.S. 1047, 110 S. Ct. 1511, 108 L. Ed. 2d 1511 (1990) (*Jackson* rule inapplicable where defendant initiated conversation). The Supreme Court has ruled that a defendant's postindictment waiver of the sixth amendment right to counsel was valid when a defendant initiated conversation with police, despite the fact that the defendant had waived the right without the presence of counsel. *Patterson* v. *Illinois*, supra, 294.

The defendant contends, however, that article first, § 8, of the Connecticut constitution encompasses a more expansive right to counsel than its federal counterpart. In this connection, he urges us to adopt the rule set forth in *People* v. *Settles*, 46 N.Y.2d 154, 162–63, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978), in which the New York Court of Appeals ruled that a proper postindictment waiver of counsel under the New York constitution can occur only in the presence of counsel. In

*Settles*, the court sustained the defendant's motion to suppress the results of a police initiated lineup held in the absence of the defendant's counsel after counsel had been appointed. Id., 165. The defendant in the present case argues that, because Connecticut, like New York, has a long tradition supporting the right to counsel in criminal matters, we should adopt the rule articulated by the New York Court of Appeals in *Settles* under our own state constitution. We disagree.

We note at the outset that Connecticut "has had a long history of recognizing the significance of the right to counsel, even before that right attained federal constitutional importance. . . . Not only was Connecticut the first state to adopt the public defender system; *State* v. *Hudson*, 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment incorporated the sixth amendment right to counsel)] . . . . *Spring* v. *Constantino*, 168 Conn. 563, 566–67 n.2, 362 A.2d 871 (1975)." (Citations omitted; internal quotation marks omitted.) *State* v. *Stoddard*, 206 Conn. 157, 164–65, 537 A.2d 446 (1988). Although we have acknowledged that our state constitution scrupulously protects the right of an individual's access to counsel, we always have recognized that the right to counsel is a personal right. Id., 174. It logically follows that, once counsel is appointed, the defendant does not lose his personal right to initiate contact with the police without the presence of counsel. Accordingly, when a defendant initiates the contact with the police in a postarraignment setting, and the defendant is properly and fully aware of his right to counsel, he may freely choose to speak without the presence of counsel.

In ruling that a postindictment waiver can be made by the accused in the absence of counsel, we do not

retreat from our precedents protecting the right to counsel under our state constitution. Indeed, our precedents already have considered and rejected aspects of New York's sweeping per se rule. First, we rejected the "derivative" right to counsel[9] in holding that no state constitutional violation occurred when, at the time of interrogation, the police knew that the defendant was represented by counsel on an unrelated matter. *State* v. *Derrico*, 181 Conn. 151, 167–68, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Second, reasoning that the right to counsel always remains a personal right, we further "decline[d] to follow the strict rule adopted by the New York courts, that counsel may invoke the rights of a suspect merely by diligently intervening in the proceeding." *State* v. *Stoddard*, supra, 206 Conn. 167–68. The defendant has advanced no persuasive reason to depart from our previous holdings and to embrace New York's rule requiring the presence of counsel for an accused to effect a valid waiver of that right to counsel.

Our conclusion is supported by the decisions of courts in our sister states. The Supreme Court of Maine has refused to adopt a per se standard under the state constitution for waiver of the right to counsel in the postindictment stage on the ground that such a rule would interfere with a defendant's freedom of choice. *State* v. *Carter*, 412 A.2d 56, 60–61 (Me. 1980). Furthermore, the Supreme Court of New Hampshire has ruled that under its state constitution, "spontaneous statements by the [postindictment] accused in the absence of his attorney, not elicited by governmental action, are admissible." *State* v. *Scarborough*, 124 N.H. 363, 369, 470 A.2d 909 (1983). The Supreme Court of Delaware has held that the right to counsel afforded by article

---

[9] The "derivative" right to counsel in New York applies to preclude all custodial interrogation, even on unrelated crimes, when a defendant already has counsel on prior pending charges. *People* v. *Settles*, supra, 46 N.Y.2d 161.

first, § 7, of its constitution is coextensive with the sixth amendment right to counsel. See *Lovett* v. *State*, 516 A.2d 455, 464–65 (Del. 1986), cert. denied, 481 U.S. 1018, 107 S. Ct. 1898, 95 L. Ed. 2d 504 (1987).

Those states that have invalidated waivers of the right to counsel outside the presence of counsel have done so in cases that are readily distinguishable from the present case, because they involved *police initiated* or *police induced* communications with represented persons. See, e.g., *Waterhouse* v. *State*, 429 So. 2d 301, 305 (Fla. 1983) (confession suppressed where police initiated communication with defendant after counsel was appointed at first court appearance); *State* v. *Liulama*, 9 Haw. App. 447, 463, 845 P.2d 1194 (1992), cert. denied, 74 Haw. 652, 875 P.2d 225 (1993) (state could not initiate conversation with defendant concerning charges against him without consent of defense counsel after adversarial proceedings commenced); *State* v. *Lefthand*, 488 N.W.2d 799, 801–802 (Minn. 1992) (custodial interrogation of formally accused person represented by counsel could not proceed prior to notification of counsel or presence of counsel); *State* v. *Sanchez*, 129 N.J. 261, 276, 609 A.2d 400 (1992) (adoption of New York's per se rule expressly rejected, but defendant's ability to waive right to counsel restricted where prosecutor or agents initiated contact without informing defendant he could obtain counsel); *State* v. *Frye*, 846 S.W.2d 443, 448 (Tex. App. 1992) (violation of Texas constitution when prosecutor contacted defendant and elicited incriminating information without notifying defense counsel).

Finally, the defendant contends that public policy considerations demand that we adopt a per se rule invalidating waivers of the right to counsel under our state constitution. The defendant does not support his position with relevant precedents. Rather, he relies on

the Connecticut Rules of Professional Conduct in support of his proposition that, as a matter of state constitutional law, "authorities" should not communicate with defendants who are represented by counsel. Rule 4.2 of the Connecticut Rules of Professional Conduct provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The defendant contends that rule 4.2 prohibits both prosecutors and their agents from communicating with defendants who are represented by counsel, and that the police, in seeking the advice of the state's attorney before conducting the jailhouse interview of the defendant, acted as the agents of the state's attorney in violation of rule 4.2. We are unpersuaded.

Our review of the record indicates, to the contrary, that the state's attorney did not attempt either to contact the defendant or supervise the police in their communication with the defendant. Rather, the defendant initiated the conversation with DeLallo when he requested that DeLallo come to the jailhouse. In seeking the legal advice from the state's attorney, the police only sought to confirm the propriety of their conduct in response to the defendant's request. The role of the state's attorney thus was limited to answering questions concerning the legality of responding to the defendant's request to talk to them. If we were to rule that the police acted as agents in this case because they sought advice from the state's attorney, we would discourage the police from seeking such advice regarding the propriety of their conduct in the future. This we decline to do. On the basis of our review of the record, we conclude that the trial court could reasonably have determined that the police did not act as agents of the state's attorney, and that, therefore, they did not breach any ethical

canon or violate article first, § 1, of the Connecticut constitution in seeking the legal advice of the state's attorney before they went to the defendant's cell at the request of the defendant.

On the basis of our review of the text of article first, § 8, of the Connecticut constitution, as well as the federal and state precedents, history, and public policy considerations related to the right to counsel, we conclude that article first, § 8, does not require the presence of counsel for a valid waiver of the right to counsel, when the defendant himself initiates contact with the police and has been properly advised of his *Miranda* rights.

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN, PALMER and MCDONALD, Js., concurred.

BERDON, J., dissenting. The decision of the majority undermines the defendant's constitutional right to counsel by sanctioning his waiver of the right to have counsel present during postarraignment interrogation without the presence of his attorney. Although the issue before this court is whether article first, § 8, of the Connecticut constitution requires the presence of the defendant's appointed counsel, the majority commences its analysis with federal precedent. This is, of course, proper because federal precedent is one of the *Geisler*[1] factors utilized in construing the contours of our state constitution. I, too, shall start my analysis with the same United States Supreme Court cases that the majority relies upon.

[1] In *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we established the following six factors for construing the contours of our state constitution: (1) the textual approach; (2) holdings and dicta of this court, and of the Appellate Court; (3) federal precedent; (4) the sibling approach; (5) the historical approach; and (6) economic/sociological considerations.

The sixth amendment to the United States constitution accords a criminal defendant the right to the assistance of counsel in "all criminal prosecutions" and that right attaches "at or after the time that adversary judicial proceedings have been initiated . . . ." *Kirby* v. *Illinois*, 406 U.S. 682, 688, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972).[2] The majority points out, and I agree, that the Supreme Court of the United States in *Michigan* v. *Jackson*, 475 U.S. 625, 636, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), adopted a per se rule providing that any waiver of the sixth amendment right to counsel in a police initiated interview or interrogation is invalid. That, however, ends my agreement because from that point on the majority flagrantly misconstrues the United States Supreme Court holdings.

Relying on *Patterson* v. *Illinois*, 487 U.S. 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988), the majority claims that a "defendant's postindictment waiver of the sixth amendment right to counsel was valid when a *defendant initiated conversation with police*, despite the fact that the defendant had waived the right without the presence of [his appointed] counsel." (Emphasis added.) The majority, however, misconstrues the holding of *Patterson*. In *Patterson*, counsel had not been appointed and accepted by the accused when he requested to talk to the police. Id., 288–89. Indeed, the majority in *Patterson* made it crystal clear that it was "a matter of some significance that [the accused] had not retained,

---

[2] The existence of the right to counsel at postarraignment custodial interrogation is clear. "It has two sources. The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations. . . . The Sixth Amendment guarantee of the assistance of counsel also provides the right to counsel at postarraignment interrogations. The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment . . . thereafter, government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies." (Citations omitted.) *Michigan* v. *Jackson*, 475 U.S. 625, 629–30, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986).

or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities. Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." Id., 290 n.3.[3]

The Supreme Court in *Patterson* then cited to *Maine v. Moulton,* 474 U.S. 159, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985),[4] which made it clear that a defendant's right to have his retained counsel present before he can validly waive his right to counsel during postarraignment interrogation is not dependent upon who initiated the communication.[5] In *Moulton,* unlike *Patterson,* the defendant did have a lawyer. While the defendant was represented by counsel, but without notifying counsel, the police wired a cooperative codefendant with a listening device, which allowed them to overhear inculpatory statements made by the defendant. The state in *Moulton* attempted to distinguish the case based upon who initiated the conversation between the defendant and the police agent. Justice Brennan writing for the majority stated with respect to this claimed distinction

---

[3] Cf. *McLeod* v. *Ohio,* 381 U.S. 356, 85 S. Ct. 1556, 14 L. Ed. 2d 682 (1965) (summary reversal of Ohio Supreme Court decision that held that statements of indicted, unrepresented defendant made while he was voluntarily endeavoring to aid police in securing evidence of crime were admissible at trial).

[4] Although *Maine* v. *Moulton,* supra, 474 U.S. 159, is the critical case in both *Michigan* v. *Jackson,* supra, 475 U.S. 625, and *Patterson* v. *Illinois,* supra, 487 U.S. 285, the majority in present case completely ignores *Moulton* in its analysis.

[5] See *Dew* v. *United States,* 558 A.2d 1112, 1118 (D.C. App. 1989) (although police initiated interrogation, court stated that "the critical question remains unresolved on this record: was [the defendant] represented by [an] attorney . . . within the meaning of *Patterson, Moulton,* [*United States* v. *Henry,* 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980)] and *Massiah* [v. *United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)] at the time he gave his . . . statement to the police?"); *People* v. *Kidd,* 129 Ill. 2d 432, 453–54, 544 N.E.2d 704 (1989) ("*Patterson* does not support the State's contention . . . because the [United States Supreme] Court noted that the defendant in *Patterson* had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by the police").

by the state: "[T]he identity of the party who instigated the meeting at which the Government obtained incriminating statements was not decisive or even important to our decisions in *Massiah* [v. *United States*, 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)] or [*United States* v. *Henry*, 447 U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980)]. Thus, while in *Massiah* it may have been the Government agent who was responsible for setting up the meeting with the defendant, one discovers this only by looking to the opinions of the Court of Appeals. It is not mentioned in this Court's opinion since *the issue of who set up the meeting with whom was not pertinent to our disposition.*" (Emphasis added.) *Maine* v. *Moulton,* supra, 174–75.

Justice Brennan continued in *Moulton*: "Moreover, four years after *Massiah*, the Court summarily reversed a conviction where the defendant requested the meeting and initiated and led the conversation in which incriminating statements were made to an undercover informant. *Beatty* v. *United States*, 389 U.S. 45 [88 S. Ct. 234, 19 L. Ed. 2d 48] (1967) (per curiam). In that case, the Solicitor General made the same argument that he and the State make today . . . [and] we rejected this argument in an opinion that simply cited *Massiah*. Finally, in *Henry*, we deemed it irrelevant that in *Massiah* the agent had to arrange the meeting between [the defendant] and his codefendant while here the agents were fortunate enough to have an undercover informant already in close proximity to the accused. [*United States* v. *Henry*, supra, 447 U.S. 272 n.10]." (Citation omitted; internal quotation marks omitted.) *Maine* v. *Moulton,* supra, 474 U.S. 175.

Justice Brennan went on to state in *Moulton* that "[t]he Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. As noted above, this guarantee includes the

State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. See [*United States* v. *Henry*, supra, 447 U.S. 276] (Powell, J., concurring). However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *Maine* v. *Moulton*, supra, 474 U.S. 176.

The second case relied upon by the majority is *Michigan* v. *Harvey*, 494 U.S. 344, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990). *Harvey*, however, had nothing to do with the admissibility of an accused's statements to the police in the absence of his attorney. "The question presented [in *Harvey* was] whether the prosecution may use a statement taken in violation of the [*Michigan* v. *Jackson*, supra, 275 U.S. 636] prophylactic rule to impeach a defendant's false or inconsistent testimony [at trial]." *Michigan* v. *Harvey*, supra, 345–46. The majority is simply incorrect when it claims that *Harvey* can be construed to support that the accused may waive the right to counsel when "the accused himself initiates the communication," at a time when he was represented by an attorney.[6]

---

[6] The majority also relies on three United States Circuit Court of Appeals cases to support its interpretation of *Patterson*. The facts of those cases,

It is therefore clear, under the sixth amendment right to counsel, that once an accused is represented by counsel the waiver of that right can be accomplished only either through or in the presence of an attorney for the accused, regardless of whether the accused initiated the discussion. My analysis should end here because the federal constitution sets the floor for constitutional rights below which the states cannot go under their state constitutions. *State* v. *Marsala*, 216 Conn. 150, 160, 579 A.2d 58 (1990). Nevertheless, as I point out later in this opinion, even if the sixth amendment did not require an attorney to be present before there could be a valid waiver, our state constitution based upon the remaining *Geisler* factors requires this court to hold that the presence of retained or appointed counsel is also required under article first, § 8.

Before continuing with my state constitutional analysis, I will summarize the pertinent facts with respect to the October 22, 1992 statement of the defendant, Michael Piorkowski, which implicated him in the murder that is the subject of this certified appeal. The defendant was arraigned on murder charges on October 21, 1992, in the Superior Court. At that time, a public defender was appointed for and accepted by the defendant. That same day, the defendant asked Detective

however, are distinguishable from this case. In *Smith* v. *Dugger*, 840 F.2d 787 (11th Cir. 1988), cert. denied, 494 U.S. 1047, 110 S. Ct. 1511, 108 L. Ed. 2d 647 (1990), and *Murphy* v. *Holland*, 845 F.2d 83 (4th Cir. 1988), the defendant was not represented by counsel when he spoke to the police authorities. The facts in *United States* v. *Mills*, 1 F.3d 414 (6th Cir. 1993), as they appear in the Circuit Court of Appeal's opinion, are too ambiguous to determine whether an attorney was actually appointed after the defendant requested one at her arraignment.

The majority also relies on this court's own holding in *State* v. *Jones*, 205 Conn. 638, 534 A.2d 1199 (1987). *Jones* held that the sixth amendment right to counsel can be waived in a defendant initiated conversation without the presence of appointed counsel. *Jones*, which was decided one year before *Patterson*, and which does not even discuss or cite *Moulton*, is thus in conflict with federal constitutional law and, in my opinion, should be overruled.

Robert DeLallo of the Norwalk police department if he "would come up to speak with him in jail." After hearing the defendant's request, DeLallo contacted the office of the state's attorney to ascertain whether the interview of the defendant at the jail would be appropriate. Assistant state's attorney James Bernardi and Phil O'Grady, an inspector with the state's attorney's office, advised DeLallo that it was permissible as long as the interview had been initiated by the defendant. DeLallo testified that he would not have gone to the jail without prior approval from the state's attorney's office. Detectives DeLallo and Nelson Alicia interviewed the defendant and obtained the October 22, 1992 statements after furnishing the defendant with *Miranda* warnings. The aforesaid interview of the defendant occurred without the knowledge of the public defender.

Article first, § 8, of our state constitution,[7] which, in part, guarantees the right to counsel in a criminal prosecution must be viewed through its historical lens. Chief Justice Peters, writing for the majority in *State v. Stoddard*, 206 Conn. 157, 537 A.2d 446 (1988), set forth the right to counsel in its historical context as follows: "This state has had a long history of recognizing the significance of the right to counsel, even before that right attained federal constitutional importance. Until

---

[7] Article first, § 8, of the Connecticut constitution provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

1836, the common law of England denied the services of counsel to a person charged with a felony for anything but advisory guidance on questions of law. *Powell* v. *Alabama,* 287 U.S. 45, 60, 53 S. Ct. 55, 77 L. Ed. 158 (1932). This rule was defended largely on the theory that the court itself was counsel for the accused. Id., 61.

"Although in 1708 Connecticut enacted a law prohibiting pleading for hire without the express consent of the court; *State* v. *Gethers,* 197 Conn. 369, 389–90 n.19, 497 A.2d 408 (1985); the custom of assigning counsel in all criminal cases quickly became the norm. *State* v. *Davis,* 199 Conn. 88, 99, 506 A.2d 86 (1986). By the end of the eighteenth century, the Connecticut legislature had abolished all those odious laws arising from the English common law tradition and had assured that any person charged with a crime was entitled to . . . counsel . . . ." (Internal quotation marks omitted.) *State* v. *Stoddard,* supra, 206 Conn. 164–65.

Chief Justice Peters went on to explain that "[w]hen the customary right to counsel was formally incorporated into the Connecticut constitution in 1818, the advice and services of counsel were regarded as crucial to a criminal defendant at any time, especially given the inability of a defendant to testify in Connecticut in 1818. . . . More contemporary developments suggest that this state's commitment to securing the right to counsel has not diminished since 1818. Not only was Connecticut the first state to adopt the public defender system; *State* v. *Hudson,* 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment incorporated the sixth amendment right to counsel)] . . . . The United States Supreme Court has turned to the historical experience of Connecticut in

expanding the right to counsel under the federal constitution. *Faretta* v. *California*, 422 U.S. 806, 827, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Powell* v. *Alabama* [supra, 287 U.S. 62–63]." (Citation omitted; internal quotation marks omitted.) *State* v. *Stoddard*, supra, 206 Conn. 165.

This rich history demonstrates that "the fundamental right to counsel is elevated to the highest order." *State* v. *Hamilton*, 228 Conn. 234, 260, 636 A.2d 760 (1994) (*Berdon, J.*, dissenting). Indeed, even before the initiation of the adversarial judicial proceeding—that is, before arraignment—we have held that under our state constitution, a suspect's "waiver of presence of counsel can, under certain circumstances, be shown invalid if the police fail to inform a suspect of [his counsel's efforts to communicate with him]." *State* v. *Stoddard*, supra, 206 Conn. 173. This holding was based on the duty of the police to "act reasonably, diligently and promptly to provide counsel [for the suspect] with accurate information and to apprise the suspect of the efforts by counsel." Id., 167. If, under the state constitution, prearraignment waiver of counsel is invalidated when an accused is not informed of his counsel's request to speak to him, it logically follows that there can be no effective postarraignment waiver without the presence of appointed counsel.

We should also look to the decisions of the New York Court of Appeals interpreting the extent of an accused's right to counsel under its own constitution. In *People* v. *Settles*, 46 N.Y.2d 154, 162–63, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978), the Court of Appeals made explicit that "a criminal defendant under indictment and in custody may not waive his right to counsel unless he does so in the presence of an attorney . . . ." (Citations omitted.) The holding in *Settles* is especially persuasive in light of New York's historical emphasis on the significance of the right to counsel that is similar to that of

Connecticut. New York first recognized the right to counsel in 1777; see N.Y. Const., art. XXXIV (1777); and recognized an indigent's right to counsel well before *Gideon* v. *Wainwright*, supra, 372 U.S. 335. *People* v. *Settles*, supra, 156. The Court of Appeals explained in *Settles* that the right to counsel "strikes the balance in favor of the defendant by placing a buffer, in the form of an attorney, between himself and the coercive power of the State." Id., 164. The balance should be struck in favor of the defendant because "[o]nce a matter is the subject of legal controversy any discussions relating thereto should be conducted by counsel: at that point the parties are in no position to safeguard their rights." *People* v. *Samuels*, 49 N.Y.2d 218, 222–23, 400 N.E.2d 1344, 424 N.Y.S.2d 892 (1980).

The right to counsel has always been given a broad interpretation. The United States Supreme Court, "[a]lmost a half century ago, in *Johnson* v. *Zerbst*, 304 U.S. 458 [58 S. Ct. 1019, 82 L. Ed. 1461] (1938), a case involving an alleged waiver of a defendant's Sixth Amendment right to counsel [pointed out] that we should 'indulge every reasonable presumption against waiver of fundamental constitutional rights.' [Id., 464]. For that reason, it is the State that has the burden of establishing a valid waiver. *Brewer* v. *Williams*, [430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)]. Doubts must be resolved in favor of protecting the constitutional claim." *Michigan* v. *Jackson*, supra, 475 U.S. 633.

There are three important policy considerations that call for a state constitution prohibition against allowing a defendant to waive his right to have his attorney present. First, rule 4.2 of our Rules of Professional Conduct clearly prohibits prosecutors from communicating with an accused party about the subject of the accused's case, "unless the lawyer has the consent of the other

lawyer or is authorized by law to do so." This prohibition also applies to those persons who act as prosecutor's agents in the course of the adversarial process. As the New York Court of Appeals so clearly stated in *People* v. *Hobson,* 39 N.Y.2d 479, 485, 348 N.E.2d 894, 384 N.Y.S.2d 419 (1976), "it would not be rational, logical, moral, or realistic to make any distinction between a lawyer acting for the State who violates the ethic directly and one who indirectly uses the admission improperly obtained by a police officer, who is the badged and uniformed representative of the State. To do so would be, in the most offensive way, to permit that to be done indirectly what is not permitted directly." See *People* v. *Sharp,* 150 Cal. App. 3d 13, 18, 197 Cal. Rptr. 436 (1983) ("when the prosecutor in the instant case directed his agents to conduct the lineup without insuring that defense counsel was properly notified, he obtained evidence by means violative of his professional ethical responsibilities").

The purpose of this rule "is to preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer. The rule is designed to prevent situations in which a represented party may be taken advantage of by opposing counsel." *Pinsky* v. *Statewide Grievance Committee,* 216 Conn. 228, 236, 578 A.2d 1075 (1990). "[T]he majority of jurisdictions presented with the issue have held that communicating with defendants who are represented by counsel violates the applicable rules of professional conduct." *State* v. *Lefthand,* 488 N.W.2d 799, 801–802 n.6 (Minn. 1992), citing *United States* v. *Hammad,* 858 F.2d 834, 839–40 (2d Cir. 1988), cert. denied, 498 U.S. 871, 111 S. Ct. 192, 112 L. Ed. 2d 154 (1990), and *United States* v. *Foley,* 735 F.2d 45, 48 (2d Cir. 1984), cert. denied, 469 U.S. 1161, 105 S. Ct. 915, 83 L. Ed. 2d 928 (1985); see *United States* v. *Thomas,* 474

F.2d 110, 111–12 (10th Cir.), cert. denied, 412 U.S. 932, 93 S. Ct. 2758, 37 L. Ed. 2d 160 (1973).

Contrary to the state's assertion, and the majority's opinion, the state's actions are no less unethical because the defendant initiated the communication with the police. This court recognized in *Stoddard* that a test to determine the validity of a suspect's waiver of his right to counsel that "hinges solely on intentional police [conduct] is inconsistent with the underlying focus of the [suspect's due process rights]." *State* v. *Stoddard*, supra, 206 Conn. 170. "Courts have consistently ruled that the ethical prohibition [contained in rule 4.2] bars a prosecutor from communicating with a represented individual without his or her counsel even if it is the individual who makes the first contact. . . . [T]he Committee on Professional Ethics of the [American Bar Association] has unanimously ruled that the ethical prohibition is violated even when the defendant initiates contact with the government." (Citations omitted.) *United States* v. *Lopez*, 765 F. Sup. 1433, 1451–52 (N.D. Cal. 1991), vacated, 4 F.3d 1455, 1464 (9th Cir. 1993) (although Circuit Court of Appeals agreed prosecutor had violated ethical prohibition, it vacated District Court's order dismissing indictment because it held that defendant was not actually prejudiced by prosecutorial misconduct).[8] Thus, whether the accused voluntarily initiated contact with the police should have no bearing on this court's determination of whether an accused has waived his postarraignment right to counsel.

---

[8] In recognition of this ethical constraint, the United States Department of Justice has promulgated rules prohibiting all government attorneys and their agents from any communication with represented defendants in those cases where the defendant indicates a desire to waive counsel, unless certain safeguards are upheld—including requiring either "[a] federal district judge, magistrate judge or other court of competent jurisdiction [to assess whether the] . . . waiver is voluntary, knowing, and informed," or waiting until "*counsel has consented to the communication.*" (Emphasis added.) 28 C.F.R. § 77.6 (c) (2) (i) and (ii) (1996).

Surely, the constitutional guarantee of the right to counsel comprehends no less protection than rule 4.2 of the Rules of Professional Conduct. As one of our sibling jurisdictions has so clearly stated: "The protection afforded a criminal defendant by [the state constitution] must be held to be at least co-extensive with that provided by the Code of Professional Responsibility to a party in a civil action." *State* v. *Wiegers*, 373 N.W.2d 1, 14 (S.D. 1985).

Second, the presence of counsel at the interrogation of an accused protects society's interest in providing defendants with a fair trial. "If the accused decides to talk to his interrogators, the assistance of counsel can mitigate the dangers of untrustworthiness. With a lawyer present the likelihood that the police will practice coercion is reduced, and if coercion is nevertheless exercised the lawyer can testify to it in court. The presence of a lawyer can also help to guarantee that the accused gives a fully accurate statement to the police and that the statement is rightly reported by the prosecution at trial." *Miranda* v. *Arizona*, 384 U.S. 436, 470, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Furthermore, "[o]nce [the] accused has sought the safeguard of counsel, it is unfair to let skilled interrogators lure him from behind the shield into an unequal encounter. To permit officers to question a represented suspect in the absence of counsel encourages them to undermine the suspect's decision to rely upon counsel. Such interrogation subverts the attorney-client relationship." Note, "Interrogation and the Sixth Amendment: The Case for Restriction of Capacity to Waive the Right to Counsel," 53 Ind. L.J. 313, 315 (1977–78).

Finally, a per se rule that an accused person cannot waive his right to counsel after the state has initiated judicial criminal proceedings draws a "clear and easily identifiable line at the point between the investigatory and adversary stages of a criminal proceeding. Such

clarity in [the] definition of constitutional rules that govern criminal proceedings is important to the law enforcement profession as well as to the private citizen." *Patterson* v. *Illinois*, supra, 487 U.S. 311 (Stevens, J., dissenting). A private citizen's relationship with the state is substantially altered once he has been arraigned, because only then has the "government . . . committed itself to prosecute, and only then [have] the adverse positions of [the] government and [the] defendant . . . solidified." *Kirby* v. *Illinois*, supra, 406 U.S. 689.

Moreover, the circumstances of this case underscore the necessity that appointed or retained counsel for the accused be present before there can be a valid waiver. The undisputed testimony of the detectives who conducted the October 22, 1992 interrogation indicated that, at the time of the interview, the defendant was agitated about a front page newspaper article by Peter Farrelly in the October 22, 1992 edition of the Norwalk Hour that identified him as a police informant. The defendant was concerned about other inmates reading the article, which was preceded by the bold headline: "Cop informant held on murder charge." The defendant was in fear of his life as a result of being identified as an informer and being incarcerated with other prisoners. He was so upset that the officers had to calm him down before they could proceed with the questioning. And yet, although both the prosecutor and the police knew defense counsel had been appointed, the interrogation of the visibly distraught and highly agitated defendant/police informant was conducted without defense counsel's knowledge or consent. A per se rule against the waiver by the accused of the right to have his counsel present during any interrogation would have allowed this defendant the opportunity to safeguard his rights.

From the earliest of times, as pointed out by Chief Justice Zephaniah Swift in 1796, the fundamental law

in Connecticut has been that a person charged with a crime was "entitled to every possible privilege in making his defense, and manifesting his innocence, by the instrumentality of counsel . . . ." 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 399. Counsel is absolutely essential to "assist a suspect in making an intelligent and knowing decision whether to speak or stand mute"; *State* v. *Stoddard*, supra, 206 Conn. 166; and "to protect the [due process] rights of a client undergoing custodial interrogation." *State* v. *Barrett*, 205 Conn. 437, 448, 534 A.2d 219 (1987). Allowing a criminal defendant to waive the right to have his appointed counsel present at a postarraignment interrogation, regardless of whether the defendant initiated the dialogue, undermines the right to counsel under the federal and state constitutions.

Accordingly, I dissent.