## STATE OF CONNECTICUT *v.* WILLIAM DIXON
### (9138)

SPALLONE, DALY and LANDAU, Js.

Argued March 20—decision released June 11, 1991

4

*David B. Bachman,* with whom, on the brief, was *John R. Williams,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John Waddock,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction rendered after he had entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a, to charges of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a). The defendant claims that the trial court improperly denied his motions to suppress and his motion to withdraw his nolo contendere plea. We disagree and affirm the judgment of the trial court.

The trial court found the following facts. On February 17, 1989, at about 10 p.m., Detective Sergeant Walter Casey and Officer Ralph Puglia of the West Haven police department were patrolling in the area of the Hilton Court apartment complex in West Haven. This area was known to police as a high crime area notorious for drug trafficking and car thefts. Puglia noticed a 1985 Nissan Sentra with a Maryland license plate parked in front of 20 Hilton Court. The Sentra was occupied by a lone man, secreting himself in the rear seat and behaving in a suspicious manner while the car's motor was running. Puglia approached the car and asked the man to step out. The man identified himself as Jesus Baez and said he was waiting for friends who were in 20 Hilton Court. He did not know their names or the name of the owner of the car and he did not have any personal identification. Baez did retrieve and give to the police the car's registration

and ignition keys that had a New York tag attached to them. Casey suspected that the car was stolen and called for backup.

Officers John Conzo and Paul Raucci responded, and upon arriving entered 20 Hilton Court in search of Baez' friends. After an unsuccessful search, Casey instructed Conzo to take Baez to headquarters. As Conzo was taking Baez to headquarters, they saw a large black male, later identified as the defendant, and two Hispanic men, who Baez stated were his friends, exit the rear of 20 Hilton Court. Conzo left the police cruiser and approached the three men, stating that he was a policeman and wanted to speak with them. The two Hispanic men immediately ran in different directions, the defendant retreated into the hallway of 20 Hilton Court, using a key. Conzo pursued the defendant, who slammed a door shut on Conzo's hand. Conzo then ran to the front of 20 Hilton Court where he saw the defendant and the two Hispanic males, identified as Johnny Mancebo and Robert Rosario, with Raucci and another police officer. The defendant was asked his name, address and reason for being on the premises. The defendant stated that he did not live at 20 Hilton Court. Conzo then placed the defendant under arrest for interfering with a police officer, pursuant to General Statutes § 53a-167a (a). His driver's license identified the defendant as William Dixon and listed an address in Huntington, New York. Rosario was carrying a white plastic bag that he said contained money. Raucci observed a large sum of money, later counted as $50,010, in wrappers from Connecticut National Bank (CNB).

Raucci recalled information he had received from a Yale University police officer in 1987 that a black male named William Dixon, who lived at 20 Hilton Court and owned a burgundy Chevy Nova, Connecticut registration 381-ENL, was selling cocaine out of his car and

apartment. Raucci suspected, therefore, that a drug transaction had just occurred and called Sergeant Peter Bontempo who was in charge of narcotics investigations. Bontempo and Ricci arrived at the scene and Bontempo asked the defendant what he was doing at 20 Hilton Court. The defendant had not yet been given his *Miranda* warnings. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He responded that he was visiting his girl friend in apartment B-7. A security guard advised the officers that apartment B-7 was vacant. The defendant was searched incident to his arrest, and cash, a beeper and a set of keys were seized from him. Raucci and Bontempo found a burgundy Chevy Nova in the parking lot and Bontempo observed from outside that it contained additional CNB wrappers and plastic bags commonly used in narcotics packaging. Ricci went into the apartment lobby and checked the registry of tenants. Apartment C-6 was listed in the defendant's name and Bontempo was so informed. Ricci went to apartment C-6 while Bontempo and Raucci went to headquarters to obtain a search warrant. Ricci knocked on the door of C-6 and a man named Ruckert opened the door and said it was the defendant's apartment. Ruckert said he rented a room from the defendant and shared the common areas with him. He allowed Ricci and other officers to enter the apartment and they ascertained that no one else was present and secured the apartment until the arrival of the search warrant.

At 5 a.m. on February 18, 1989, Bontempo and a police search party entered apartment C-6 pursuant to the search warrant. The search uncovered a large number of plastic sandwich bags, records indicative of narcotics transactions, records of telephone calls to New York, the defendant's mobile phone, a shoulder holster for an Uzi machine gun, a bulletproof vest, a beeper, 100 empty glass vials commonly used to package

cocaine, and a rental receipt for $800 for an apartment located at 104 Orange Landing. Bontempo and Inspector James Harris went to 104 Orange Landing at 153 Bull Hill Lane in West Haven. After knocking on the door, they heard noises inside. Using the defendant's keys, they entered 104 Orange Landing and found a television playing and a telephone answering machine turned on. After ascertaining that no one was inside, they secured the premises and waited until a search warrant arrived. The subsequent search authorized by warrant uncovered seven pounds of white powder, later tested to be cocaine, and scales, cash, and narcotics packaging materials. The defendant moved to suppress all items that were seized in both of these searches and his oral statement to Bontempo, in addition to withdrawing his nolo contendere plea.

## I

The defendant moved to suppress his oral statement given in response to Bontempo's question asking what he was doing at 20 Hilton Court. This question was asked after the defendant's arrest, but before he had been given *Miranda* warnings. See *Miranda* v. *Arizona,* supra. The defendant claims that this question constituted interrogation and that the question occurred prior to his receiving *Miranda* warnings. He asserts that, because he had not yet waived his *Miranda* rights when Bontempo's question was asked and answered, the statement should have been suppressed. The defendant also claims that the statement he made to Bontempo was obtained in violation of his sixth amendment right to counsel. In denying the defendant's motion to suppress, the trial court found that this single question was not an interrogation, but rather a routine administrative type of question that was not designed to elicit incriminating evidence.

This claim has validity only if the defendant was subject to custodial interrogation, and he bears the burden of showing that his answer to Bontempo's one question was the result of custodial interrogation. *State* v. *Vitale,* 197 Conn. 396, 409, 497 A.2d 956 (1985). Because "the determination as to whether a particular question constituted interrogation is essentially factual"; *State* v. *Evans,* 203 Conn. 212, 227, 523 A.2d 1306 (1987); we apply the clearly erroneous standard to review the trial court's decision. Id.

"Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way. . . . Before one suspected of the commission of a crime is entitled to . . . [*Miranda* warnings], two conditions are required: the suspect must be in the custody of law enforcement officials . . . and the suspect must be subjected to interrogation." (Citations omitted.) *State* v. *Vitale,* supra, 411. The state concedes that the defendant was in police custody but argues that he was not subjected to interrogation when Bontempo posed his question.

Every question posed to a defendant in custody is not equivalent to an interrogation. *State* v. *Evans,* supra, 226. The test employed to determine whether an interrogation has occurred is "whether, under all the circumstances involved in a given case, the questions asked are 'reasonably likely to elicit an incriminating response from the suspect.' The test as to whether a particular question is 'likely to elicit an incriminating response' is objective; the subjective intent of the police officer is relevant but not conclusive and the relationship of the questions asked to the crime committed is 'highly relevant.'. . . Ordinarily, the routine gathering of background, biographical data will not constitute interrogation." (Citations omitted). Id. Furthermore, questions that are asked after an

event or occurrence that would naturally tend to evoke such an inquiry do not constitute interrogation. These questions, unlike the sort of interrogation that prompted the implementation of the *Miranda* safeguards, are characterized by brevity, neutrality and an absence of intent to elicit a confession or admission. Most, moreover, are typically spontaneous. *State* v. *Simoneau,* 402 A.2d 870, 873–74 (Me. 1979).

Bontempo's question, "What are you doing here?" was asked at the threshold of the encounter and was arguably aimed at determining the nature of the situation confronting the police at that time. There is no suggestion in the record that Bontempo's single query was probing, accusatory, or likely to elicit an incriminatory response. See, e.g., *Hairston* v. *United States,* 500 A.2d 994 (D.C. App. 1985) (warnings not required where, after suspect told officer he shot victim, officer asked, "What happened?"); *Robertson* v. *United States,* 429 A.2d 192 (D.C. App. 1981) (no interrogation where officer went to suspect's apartment, arrested him and asked "Do you know why I'm here?"); *People* v. *Quicke,* 71 Cal. 2d 502, 455 P.2d 787, 78 Cal. Rptr. 683 (1969) (no interrogation where officer came upon suspect lying on top of a dead body, handcuffed suspect and asked "What happened?").

When we consider the fact that Bontempo asked one question, without the intent of eliciting a confession or inculpatory information, but simply to investigate the situation before him, we conclude that the trial court properly held that this query was not an interrogation. See *State* v. *Evans,* supra, 227.

The defendant's cursory claim to a sixth amendment violation is also without merit. The right to counsel may arise when the government deliberately elicits incriminating information; *State* v. *Vitale,* supra, 412; but such is not the case here. In light of our conclusion that Bon-

tempo did not deliberately elicit an incriminatory answer by his single, general question, we further conclude that the defendant's sixth amendment right to counsel was not violated.

Thus, the trial court correctly refused to suppress the defendant's statement.

## II

The defendant next contends that the search warrant obtained for 20 Hilton Court apartment C-6 was inadequate because it did not meet the *Aguilar-Spinelli* test. *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). The defendant argues that the affidavit underlying the search warrant application failed to set forth the informants' basis of knowledge and reliability. Further, the defendant claims that the subsequent search of the defendant's premises known as apartment 104 Orange Landing at 153 Bull Hill Lane was also tainted because the search warrant issued for that address relied on the prior illegal search of 20 Hilton Court apartment C-6. See *Wong Sun* v. *United States,* 371 U.S. 471, 484–88, 83 S. Ct. 407, 371 L. Ed. 2d 441 (1963).

Specifically, the defendant challenges paragraphs five and eleven of the affidavit that was submitted with the application to search 20 Hilton Court apartment C-6. Paragraph five states that a Sergeant Barber of the Yale University police told Raucci that an informant had told Barber that the defendant was selling cocaine from 20 Hilton Court, that the defendant operated a burgundy Chevy Nova bearing Connecticut registration 381-ENL, and that the defendant stored cocaine in his apartment and under the Nova's dashboard when transporting the drugs. Paragraph eleven states that the affiant was told by a New Haven police officer, Hil-

den Wright, that an informant had told Wright of a black male named Dixon who was from the area of Eastern Circle in New Haven, and who was dealing drugs in that area.

In determining whether a search warrant has been properly issued, a reviewing court must ascertain whether a neutral, detached judge or magistrate determined if the affidavit contained facts sufficient to justify probable cause to issue the search warrant. *State v. Shifflett,* 199 Conn. 718, 745–46, 508 A.2d 748 (1986). "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Emphasis in original; citations omitted.) *State v. DeChamplain,* 179 Conn. 522, 528–29, 427 A.2d 1338 (1980). When an affidavit contains tips from confidential informants, the judge must make an independent evaluation of the informants' credibility by applying the *Aguilar-Spinelli* test. *State v. Delmonaco,* 194 Conn. 331, 340–41, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984). The *Aguilar-Spinelli* test requires that an affidavit must set forth facts demonstrating both the informants' basis of knowledge and the affiant's reason for crediting the informant. Id.

The trial court found, and we agree, that paragraphs five and eleven of the affidavit did not meet the criteria of the *Aguilar-Spinelli* test. Even though the informants' tips contained in those paragraphs were defective, they could still be partially considered by the issuing judge; *State v. Delmonaco,* supra, 341; because they provided only part, if any, of the basis, for a finding of probable cause. Here, there were significant other corroborative facts and probative indications of

criminal activity to support the informants' tips, and thereby provide additional color to the underlying facts supporting the judge's determination of probable cause. Id.

Even without considering the informants' tips in paragraphs five and eleven, the issuing judge had ample information to support a finding of probable cause that evidence of criminal activity would be found at 20 Hillcrest Court apartment C-6: (1) the defendant was with Mancebo and Rosario, and a background check at the scene revealed that Rosario had a New York narcotics record; (2) the trio fled when approached by police; (3) the defendant lied to police about his residence in apartment C-6 at 20 Hilton Court; (4) the defendant used a key to enter 20 Hilton Court and Ruckert, his roommate, confirmed that the defendant lived in apartment C-6; (5) a large sum of money in CNB wrappers was seized from Rosario; (6) the defendant's burgundy Chevy Nova, registered in his daughter's name, contained CNB money wrappers and plastic bags commonly used to package narcotics; (7) the affiants had personal knowledge that Dominicans were then involved in the drug trade around New Haven and Mancebo and Rosario identified themselves as Dominicans; (8) the defendant had a beeper, a device commonly used by drug dealers to facilitate sales; (9) Mancebo had a portable, cellular telephone on his person, commonly used by drug dealers to facilitate sales. Relying on his experience and common sense; see State v. Brown, 14 Conn. App. 605, 614, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); the issuing judge could find probable cause that a criminal drug transaction had just occurred. Finally, utilizing the tips contained in paragraphs five and eleven would color the aforementioned information and bridge any gap in providing a reasonable basis to find probable cause. State v. Delmonaco, supra.

This court does not engage in de novo review of the sufficiency of an affidavit, but rather gives great deference to the judge's determination. *State* v. *Kimbro,* supra, 222. We, therefore, agree with the trial court that the issuing judge correctly found probable cause to issue a valid search warrant of 20 Hilton Court apartment C-6. In view of this decision, we need not consider the defendant's derivative claim that challenges the search warrant for 153 Bull Hill Lane, apartment 104, issued after the search of the defendant's 20 Hilton Court apartment.

### III

The defendant finally claims that the trial court should have granted him an evidentiary hearing before denying his motion to withdraw his plea of nolo contendere. The following facts are pertinent to this claim. After the trial court denied the defendant's motion to suppress, the defendant filed a pro se "motion to dismiss counsel," in which he alleged a claim of ineffective assistance of counsel. The trial court treated the defendant's motion as a motion to withdraw his plea, allowed the defendant's attorney to withdraw from the case and appointed new counsel. When the defendant subsequently appeared with his new counsel, the court requested that the defendant state his claim of ineffective assistance. The defendant's counsel represented that the defendant's claim regarded prior counsel's lack of investigation of his case. After some discussion of the proper forum for such claims in view of *State* v. *Leecan,* 198 Conn. 517, 504 A.2d 480 (1986); *State* v. *Morant,* 13 Conn. App. 378, 536 A.2d 605 (1988); and *State* v. *Rish,* 17 Conn. App. 447, 455, 455 n.9, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 71, 107 L. Ed. 2d 38 (1989); the court denied the defendant's motion to withdraw his plea and the defendant excepted. At the sentencing hearing two weeks later, the defendant did not

renew his motion to withdraw his plea, request an evidentiary hearing or make any other claim and the trial court proceeded to impose a sentence.

The defendant's appeal is brought pursuant to General Statutes § 54-94a and Practice Book § 4003, which limit a defendant's appeal after a conditional nolo contendere plea to motions to suppress evidence or statements and motions to dismiss. Practice Book § 4003 (b) requires that a conditional nolo contendere plea be submitted in writing and specify the particular motions preserved for appellate review. " '[O]nly those issues fully disclosed in the record which relate either to the exercise of jurisdiction by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable . . . .' (Emphasis omitted; citations omitted.)" *State* v. *Kelly,* 206 Conn. 323, 327, 537 A.2d 483 (1988), quoting *State* v. *Madera,* 198 Conn. 92, 97–98, 503 A.2d 136 (1985). For purposes of this appeal, we regard the defendant's claim as pertinent to the knowing and voluntary nature of his plea, and thus within the ambit of the aforementioned statute and rules of practice.

We begin our analysis by noting that once a plea of nolo contendere has been entered, a defendant is not entitled to withdraw his plea unless a motion to withdraw is made prior to the conclusion of sentencing. Practice Book § 720. The trial court is obligated to permit the defendant to withdraw his plea on proof of one of the grounds in Practice Book § 721. The defendant here alleged that his plea was involuntary or entered into without his being fully and adequately informed by his legal counsel. See Practice Book § 721 (2) and (4). A defendant is not entitled to an evidentiary hearing to determine the voluntariness of his plea merely because he makes a general allegation to the contrary. *State* v. *Morant,* supra, 13 Conn. 384. Thus, if the defendant *properly* raises the issue of ineffective assistance of counsel, he may obtain an evidentiary hearing on the issue, notwithstanding the preference stated in

*Leecan* for the habeas corpus forum or by petition for a new trial. *State* v. *Leecan,* supra; *State* v. *Rish,* supra, 454–55. A trial court's decision to deny a motion to withdraw a plea is reversible only on a showing of a clear abuse of discretion. *State* v. *Morant,* 20 Conn. App. 630, 633, 569 A.2d 1140, cert. denied, 215 Conn. 818, 576 A.2d 547 (1990); *State* v. *Rish,* supra, 451.

"An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. . . . In considering whether to hold an evidentiary hearing . . . the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea . . . and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, then an evidentiary hearing is required." (Citation omitted.) *State* v. *Torres,* 182 Conn. 176, 185–86, 438 A.2d 46 (1980); *State* v. *Morant,* supra, 20 Conn. App. 633.

The record indicates that the defendant entered his plea of nolo contendere and the trial court conducted proceedings to accept the defendant's plea on December 4, 1989. The defendant has failed to provide a transcript of the plea proceedings of December 4, 1989, which is necessary for our review of the defendant's claim. Because the defendant has failed to furnish this court with an adequate record for review; Practice Book §§ 4013 and 4019; *Coveney* v. *Nicoletti,* 168 Conn. 184, 193, 362 A.2d 937 (1975); *Urban* v. *Leggio,* 1 Conn. App. 226, 228, 470 A.2d 1226 (1984); we cannot consider his claim.

The judgment is affirmed.

In this opinion the other judges concurred.