STATE OF CONNECTICUT *v.* MARCUS GREGORY
(AC 19726)

Spear, Mihalakos and Daly, Js.

---

Argued September 29—officially released December 14, 1999

*Norman A. Pattis*, for the appellant (defendant).

*Kevin Doyle*, deputy assistant state's attorney, with whom, on the brief, were *Mary Galvin*, state's attorney, and *Carolyn K. Longstreth*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Marcus Gregory, appeals from the judgments of conviction, rendered after a jury trial, of conspiracy to commit kidnapping in the first degree in violation of General Statutes

§§ 53a-92 (a) (2) (B) and 53a-48, kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (B) and 53a-8, conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (2) and 53a-48, burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (2) and 53a-8, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48, aiding robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, and larceny in the third degree in violation of General Statutes § 53a-124 (a) (1) as a lesser included offense of larceny in the second degree under General Statutes § 53a-123 (a) (1). The defendant moved to suppress physical evidence that had been seized from his person on January 9 and 10, 1997, arising from his arrest in Bridgeport. This motion was denied by the trial court.

On appeal, the defendant claims (1) that there was not reasonable suspicion to justify a pat-down during an investigatory stop pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and (2) that the defendant's fifth amendment right against self-incrimination was violated because of the failure by the police to advise him of his *Miranda* rights.[1] We affirm the judgments of the trial court.

The jury reasonably could have found the following facts: On the night of January 9, 1997, Regina Rogers returned from her place of employment to her home at Wakelee Avenue in Ansonia. As Regina Rogers entered her garage, she was accosted by the defendant, who forced her into the garage. Francis Rogers heard his wife scream and went to investigate. As he opened the garage door, he was accosted by the defendant, who was holding a pistol. Francis Rogers later identified the defendant as the man who pointed the pistol at his

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

head and ordered him to the ground. The defendant was accompanied by two other men who proceeded to ransack the Rogers' home.

The defendant and one of the other intruders forced Francis Rogers into his wife's car and drove him to an automatic teller machine where, at gunpoint, they made him withdraw $600. Upon their return, the defendant and the other men bound both victims and removed several items from their home including a Derby High School class ring and a distinctive cable wire.

While conducting a drunk driving investigation on Route 25 southbound at exit 2 in Bridgeport, Troopers Richard Gregory and Edward Wooldridge of the state police observed a red Subaru station wagon without illuminated headlights. When Wooldridge attempted to stop the car, the operator sped up and made several turns. Subsequently, the operator of the vehicle jumped out of the vehicle. At that point Wooldridge briefly observed the operator of the vehicle, whom he described as a black male with short hair wearing a dark jacket, jeans and dark sneakers. Officer Orlando Lanzante of the Bridgeport police department, along with Gregory and Wooldridge, spotted the defendant hiding behind a couch in an alley. This alley was known by the police to be located in a high crime area. Lanzante and Wooldridge drew their weapons and ordered the defendant to the ground. The defendant did not comply but protested his innocence and claimed harassment. After the defendant refused a second order to get on the ground, Gregory forced him to the ground and hand-cuffed him. The defendant was brought out of the alley and patted down for weapons by Wooldridge after the defendant failed to produce identification. When asked what he was doing in the area, the defendant replied that he had been smoking marijuana. Upon initially patting the man down, Wooldridge discovered a plastic package of marijuana in the defendant's front shirt

pocket. Wooldridge then placed the defendant under arrest for possession of marijuana and conducted a full search incident to arrest.[2] Subsequent to the arrest, the defendant was again searched and was found to be in possession of a class ring, a beeper, a cable wire and cash.

The red Subaru station wagon was later searched and found to contain several household items, all of which were later determined to have been removed from the victims' home. At about 2:20 a.m., Officer Robert Novia of the Bridgeport police department and a police dog tracked the route that the driver of the Subaru had taken to determine if the defendant had been in the vehicle. The dog was able to pick up a scent in the car and tracked the scent to the spot in the alleyway where the defendant was apprehended. The defendant was identified as the assailant by both victims.

I

The defendant's first claim is that there was no articulable suspicion to justify a pat-down search for weapons during the investigatory stop. We disagree.

When reviewing the denial of a motion to suppress, this court will not disturb the trial court's ruling if the factual findings are not clearly erroneous and the trial court's conclusions are legally and logically consistent with the facts. See *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997). This court conducts a "careful

___

[2] "Our constitutional preference for warrants is overcome only in specific and limited circumstances." *State* v. *Miller*, 227 Conn. 363, 383, 630 A.2d 1315 (1993); see *State* v. *Delossantos*, 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989) (recognizing exception for search incident to arrest as matter of state constitutional law). *State* v. *DaEria*, 51 Conn. App. 149, 165, 721 A.2d 539 (1998), recognized the rule that "[a] lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant . . . whether or not there is probable cause to search." (Internal quotation marks omitted.)

examination" of the validity of a *Terry* search for weapons because the validity of the stop implicates the defendant's constitutional rights. *Terry* v. *Ohio*, supra, 392 U.S. 27. During a *Terry* detention, the police may conduct a pat-down search to locate weapons if they reasonably believe that the suspect may be armed and dangerous. See id., 24. According to *Terry* v. *Ohio*, supra, 20–27, where a reasonably prudent officer is warranted in the circumstances of a given case in believing that his safety or that of others is endangered, he may make a reasonable search for weapons of the person believed by him to be armed and dangerous regardless of whether he has probable cause to arrest that individual for a crime or the absolute certainty that the individual is armed. Once a reasonable and articulable suspicion exists, an officer may detain a suspect to conduct an investigative stop to confirm or dispel such suspicions.[3] Suspicious conduct during a *Terry* stop, including flight at the approach of officers and a refusal to comply with officers' instructions, are other integral factors that will justify a pat-down for weapons. Our courts apply a test that weighs the totality of the circumstances. See id., 21–22.

An officer may conduct a pat-down frisk for weapons if the officer possesses a reasonable suspicion that the person possesses a weapon. See *Ybarra* v. *Illinois*, 444 U.S. 85, 93, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). To determine whether an investigatory detention and pat-

---

[3] See *State* v. *Groomes*, 232 Conn. 455, 467–68, 656 A.2d 646 (1995) (under state and federal constitutions, police may detain individual for investigative purposes if there is reasonable and articulable suspicion that individual is engaged or about to engage in criminal activity); *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994) (reasonable and articulable suspicion is objective standard that focuses not on actual state of mind of police officer but on whether reasonable person, having information available to and known by police, would have that level of suspicion); *State* v. *Cofield*, 220 Conn. 38, 45, 595 A.2d 1349 (1991) (officer's decision must be based on more than hunch or speculation).

down are permissible a two part inquiry is utilized: (1) was the officer justified in initially detaining the individual based on specific and articulable facts; and (2) did specific and articulable facts exist that suggested that the individual presented a harm to the officers or others so as to justify the pat-down. See *State* v. *Wilkins*, supra, 240 Conn. 489; see also *United States* v. *Holzman*, 871 F.2d 1496 (9th Cir. 1989). The wanton and reckless conduct by the defendant to avoid detection by the police suggests a strong consciousness of guilt. See *United States* v. *Brown*, 159 F.3d 147, 149–50 (3d Cir. 1998), cert. denied, 525 U.S. 1184, 119 S. Ct. 1127, 143 L. Ed. 2d 120 (1999). The trial court found that the *Terry* stop was justified and the length and intrusiveness of the stop were lawful pursuant to *Terry*.[4] The defendant's presence in a high crime area, his attempt to conceal himself from the police officers and his refusal to follow the officers' directions heightened the officers' fear for their safety and adequately supported the decision to perform the pat-down search.[5] The trial court weighed all of the surrounding circumstances, including the defendant's conduct, the nature of the investigation and the time and area of the stop in determining that the officers had reasonable suspicion to conclude that the defendant might have been armed and dangerous. Further, the defendant was uncooperative, and the surrounding circumstances increased the officers' suspicions and allowed them to detain the suspect and to conduct the pat-down in accordance with the law.

## II

The second claim is that the defendant's fifth amendment right against self-incrimination was violated when

---

[4] See *Terry* v. *Ohio*, supra, 392 U.S. 21.

[5] See *United States* v. *Sanders*, 994 F.2d 200, 207–208 (5th Cir.), cert. denied, 510 U.S. 955, 114 S. Ct. 408, 126 L. Ed. 2d 355, cert. denied, 510 U.S. 1014, 114 S. Ct. 608, 126 L. Ed. 2d 572 (1993) (suspect's noncompliance with order to get to ground justified handcuffing and frisk for weapons); *State* v. *Wilkins*, supra, 240 Conn. 496 (defendant's failure to keep hands in sight after twice being requested to do so by officer supported frisk for weapons).

an officer asked him why he was hiding in the alley without reading him his *Miranda* rights. The defendant concedes that the officers could lawfully detain and question him, but argues that because the officers restricted his movement by handcuffing him, any questions that were posed to him constituted a custodial interrogation thus requiring that the defendant be given *Miranda* warnings. We disagree with the defendant's contention and affirm the trial court's ruling.

*Miranda* warnings must be given once a person is placed in custody and before questioning begins.[6] The trial court ruled that the single inquiry by the officers as to why the defendant was hiding did not constitute an interrogation that would require a *Miranda* warning.[7] As a general rule, *Miranda* rights are not required to be given before asking a *Terry* detainee to explain his presence in the area. See *Berkemer* v. *McCarty*, 468 U.S. 420, 439–40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). During the course of a *Terry* stop, the police may request identification or inquire about a suspect's activities without advising the suspect of his *Miranda* rights. See *State* v. *Torres*, 197 Conn. 620, 628, 500 A.2d 1299 (1985). In this case, the officers' single question was not restrictive enough to constitute an interrogation so as to require a *Miranda* warning.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] See *Miranda* v. *Arizona*, supra, 384 U.S. 467–68.

[7] See *State* v. *Dixon*, 25 Conn. App. 3, 9, 592 A.2d 406 (1991) (after defendant's arrest, officer's question, " '[w]hat are you doing here?' " found not to be interrogation).