STATE OF CONNECTICUT *v.* RODERICK DUDLEY
(AC 19701)

Foti, Mihalakos and Dranginis, Js.

Argued October 29, 2001—officially released February 26, 2002

*G. Douglas Nash*, public defender, with whom were *Jason C. Welch*, certified legal intern, and, on the brief, *Pamela S. Nagy*, former assistant public defender, and *Rebekah L. Sprano*, certified legal intern, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Robin Cutuli*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Roderick Dudley, appeals from the trial court's judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On appeal, the defendant claims that (1) he was deprived of a fair trial by prosecutorial misconduct during the trial and during closing argument, (2) the court improperly admitted testimony on collateral matters and in violation of the defendant's sixth amendment right to counsel, (3) he was deprived of a fair trial by the court's interference and (4) the court improperly considered defense counsel's misconduct during the defendant's sentencing. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim and the defendant became acquainted after meeting each other in their neighborhood. Thereafter, the defendant sporadically visited the victim at her apartment. They would play video games and, on one occasion, smoke crack cocaine together.

On one evening at the victim's apartment, the two consumed alcohol together. The victim became tired and informed the defendant that she wanted him to leave so that she could go to sleep. He refused and demanded sexual favors. He forced her onto her bed and pinned her down. The victim, in an attempt to forestall the attack, told the defendant that she needed to take her seizure medication. The defendant temporarily let her get up from the bed, but followed her and ordered her to return to the bed. He again pinned her down and, wearing a condom, forced her to have vaginal intercourse. The victim repeatedly said "no," struggled with the defendant and covered her mouth with her hand to keep him from kissing her. After completing the sex act, the defendant threw the condom in the toilet bowl. He then dressed and left the apartment.

The victim ran out of the apartment to a nearby friend's apartment. She confided in a friend, Nina, who lived nearby, that the defendant had raped her, and the two called the police. Responding police saw the defendant on the street, whereupon the victim identified him. She then submitted to a medical examination and gave the police a signed statement.

Upon questioning by the police, the defendant initially denied ever having had sexual intercourse with the victim. At trial, however, the defendant testified that he and the victim had smoked crack cocaine and drank alcohol all day, and that they engaged in consensual sex. He claimed that the victim concocted the rape story when she became angry that he took her money and left to buy more cocaine, but did not return.

The jury returned a guilty verdict, and the court sentenced the defendant to fifteen years in the custody of the commissioner of correction. This appeal followed. Additional facts will be set forth as necessary to resolve the issues on appeal.

I

The defendant first claims that he was denied a fair trial because of a pattern of prosecutorial misconduct. Specifically, the defendant claims that the prosecutor improperly (1) questioned the defendant on cross-examination, (2) commented on the defendant's exercise of his constitutional rights, (3) vouched for the credibility of a witness, (4) appealed to the jury's emotions and (5) referred to facts not in evidence. We are not persuaded.

"Prosecutorial misconduct may occur in the course of cross-examination of witnesses . . . and may be so clearly inflammatory as to be incapable of correction by action of the court. . . . In such instances there is a reasonable possibility that the improprieties in the cross-examination either contributed to the jury's verdict of guilty or, negatively, foreclosed the jury from ever considering the possibility of acquittal." (Internal quotation marks omitted.) *State* v. *Daniels*, 42 Conn. App. 445, 456, 681 A.2d 337, cert. denied, 239 Conn. 928, 683 A.2d 397 (1996).

"Prosecutorial misconduct can [also] occur in the course of closing argument. . . . Our standard of review of a claim of prosecutorial misconduct that allegedly results in an unfair trial is well established. [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . Moreover, [w]e will not afford [relief under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), to unpre-

served] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . .

"In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 266–67, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). With that standard of review in mind, we now turn to each of the defendant's specific claims of misconduct.

A

Cross-Examination

The defendant's first claims involve the cross-examination of the defendant. The following additional facts are necessary for our resolution of those claims. During the investigation, the police found a discarded condom

in the victim's toilet bowl. Scientific evidence established that it contained the defendant's semen. The defendant, however, initially denied having had sex with the victim on the night of the rape, but admitted having had sex with her two weeks prior. The defendant later changed his story and admitted that they had had sex on the night of the alleged rape, but claimed that it was consensual. The state's theory, therefore, became that the defendant had changed his story upon learning that police found the condom containing his semen.

On cross-examination of the defendant, the state asked whether he changed his story to consensual sex because he found out that police had discovered the condom.[1] The defendant sought a mistrial, arguing that the state had pointed out what his defenses were and how they changed, and, in the alternative, he requested that a curative instruction be given to the jury that he need not prove his innocence. The court denied the defendant's motion for a mistrial and agreed that such an instruction would be given. The defendant urged that the court give a curative instruction indicating that the prosecutor should not have inquired about the defendant changing his defense. The court responded only that it might make some reference to it.

The defendant argues on appeal that the state's questioning was an improper attempt to persuade the jury that the defendant was not credible because of changes in his *defense strategies*, thereby introducing information that was not properly admitted into evidence. We are not persuaded.

---

[1] On appeal, the defendant takes issue with the following questions asked over objections: "And isn't it true that you had to change your defense to consent because you found out we found the condom in the toilet?" and, "It's not true that you first said no sex; then you said sex two weeks ago; then you said consensual sex because first you said no; then you found out that there was a condom; then you found out the condom was in the toilet so none of those defenses worked for you so you had to change it for today?" The defendant denied both questions.

"It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. . . . This is based on the notion that talking one way on the stand, and another way previously, raises a doubt as to the truthfulness of both statements." (Internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 411, 692 A.2d 727 (1997). The record makes it clear that the prosecutor's questioning, although inartfully phrased, merely was an attempt to impeach the defendant's credibility by pointing out his prior inconsistent statements.

The defendant further contends that the state's questions raised the inference that he was obliged to prove his innocence. We do not agree. "Unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Coughlin*, 61 Conn. App. 90, 96, 762 A.2d 1 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001). We conclude that the court's instruction on that point cured any harm that may have resulted.[2]

Finally, the defendant argues that the questioning constituted an improper comment on his exercise of his constitutional right to confrontation because it suggested that he changed his testimony after hearing testimony in the case. We disagree.

In *State* v. *Alexander*, 254 Conn. 290, 755 A.2d 868 (2000), our Supreme Court held that a prosecutor's comments regarding a defendant's ability to tailor his testimony to the testimony of other witnesses does not

---

[2] The court instructed in relevant part: "There were some references in the cross-examination of the defendant to his defenses in this case. You will always remember that this defendant does not have to prove his innocence or noninvolvement, that the burden of proving the defendant's guilty beyond a reasonable doubt always remains with the state and never shifts to the defendant."

implicate his right to a fair trial or his right to confrontation. The Supreme Court stated that "by exercising his fifth amendment right to testify on his own behalf, it is axiomatic that a defendant opens the door to comment on his veracity. It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination. . . . A defendant cannot both take the stand and be immune from impeachment. . . . An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses." (Citations omitted; internal quotation marks omitted.) Id., 297–98. The Supreme Court reasoned that "[i]t is . . . [quite impossible] for the jury to evaluate the credibility of the defendant's testimony while blotting out from its mind the fact that before giving the testimony the defendant had been sitting there listening to the other witnesses." (Internal quotation marks omitted.) Id., 299. As in *Alexander*, in this case the comments did not invite the jury to draw an inference of guilt based solely on the exercise of the defendant's constitutional right to be present at trial and to confront the witness. It was proper for the prosecutor to request that the jury generally consider the defendant's unique opportunity when judging his credibility. See id.

## B

### Closing Argument

The defendant next points to several portions of the prosecutor's closing argument as improper. The defendant did not object to the statements or request a curative instruction. He therefore seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[3]

---

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis,

# 1

## Right to be Present at Trial

The defendant first claims that the prosecutor improperly invited the jury to draw an adverse inference from the defendant's ability to tailor his testimony because of his presence during the trial, and thereby implicated the exercise of his rights to confrontation and to be present at trial.[4] We do not agree.

We conclude that our Supreme Court's decision in *State* v. *Alexander*, supra, 254 Conn. 290, is controlling. As we discussed in part I A, the jury was not invited

the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

"The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quotation marks omitted.) *State* v. *Jones*, 65 Conn. App. 649, 653, 783 A.2d 511 (2001).

[4] The prosecutor in her closing argument stated in relevant part: "He left the victim's house, according to his testimony, at 12:40. He arrives at his friend's house at 1 o'clock. He stayed and he bought the three dime bags. That was thirty dollars. He gave twenty dollars to a friend he owed, which coincidentally is the fifty dollars he claims to have been given by the victim, and he knows that the police didn't find any cash on him. . . .

"I submit to you that the testimony by the defendant of the friend's house that filled in the time gap between 12:40 and 3 a.m. is not credible. Of course, don't forget to consider what interest the defendant has in the outcome of this case. Clearly, he has a motive to lie or to hide the truth. His motive to lie would be the fact that he faces here a criminal conviction. . . .

"Now, the other statement, which is denied by the defendant, but if you believe inspector [Stephen] Looby that was that no blood was drawn on July 16, 1998, because the defendant thought the condom was from consensual sex with the victim from an incident from a date two weeks prior to the incident in question. I think it's reasonable for you to infer from that fact that at this point the defendant had knowledge that a condom was found.

"Now, the evidence undisputedly shows the condom was in the toilet. It's reasonable to think a condom wouldn't be in a properly working toilet where people were living for two weeks. So, now the sex claim doesn't work. Here, at trial, the defendant testifies that he had sex with the victim and it was consensual."

to draw an adverse inference on the basis of the defendant's presence. Rather, the prosecutor asked the jury to evaluate the defendant's credibility in light of his presence at trial. We therefore conclude that the defendant has failed to establish that the alleged violation clearly exists and decline to review his claim.

2

Credibility of the Witnesses

Next, the defendant claims that the prosecutor improperly vouched for the credibility of the witnesses. We are unpersuaded.

"We acknowledge that it is improper for a prosecutor to express his or her opinion, directly or indirectly, as to a defendant's guilt. *State* v. *Singh*, 59 Conn. App. 638, 647, 757 A.2d 1175 (2000), cert. granted on other grounds, 255 Conn. 935, 767 A.2d 1214 (2001). We also recognize, however, that advocates must be allowed latitude in argument to accommodate for the zeal of counsel in the heat of argument. *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 399–400, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). The mere use of phrases such as 'I submit,' 'I find,' or 'I believe' does not constitute improper argument. Id., 400." (Internal quotation marks omitted.) *State* v. *Moore*, 65 Conn. App. 717, 724, 783 A.2d 1100, cert. denied, 258 Conn. 940, 786 A.2d 427 (2001). A prosecutor properly may comment on credibility of witness where such comment reflects reasonable inferences from evidence adduced at trial; *State* v. *Burton*, 258 Conn. 153, 170, 778 A.2d 955 (2001) (proper to suggest fact that witnesses had not rehearsed stories together enhanced their credibility); and may argue that witnesses had no apparent motive to lie. See *State* v. *Hicks*, 56 Conn. App. 384, 394, 743 A.2d 640 (2000). We conclude that the defendant failed to show that a constitutional violation clearly exists. Any impropriety

in the prosecutor's comments was assuaged by the court's instructions to the jury to determine for itself the credibility of the witnesses and not to consider as facts any arguments or statements made by the attorneys. See *State* v. *Moore*, supra, 725.

### 3

### Appeal to Emotions

The defendant claims that the prosecutor improperly appealed to the jury's emotions. Specifically, he argues that the prosecutor improperly "detailed the hospital and judicial procedures" that the victim was subjected to when she accused the defendant of rape.[5]

"An appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record." *State* v. *Alexander*, supra, 254 Conn. 307. Assuming without deciding that the prosecutor's statements were improper argument, we are not persuaded that the statement "so infected the trial with unfairness as to make the conviction a denial of due process." Id., 303.

The defendant further argues that the state's rebuttal argument wherein the prosecutor argued, "I can't believe I heard this. Was he blaming the victim for the situation she put herself into? Oh, my God. She was there with a guy whose name she did not know. They

---

[5] The state argued to the jury in relevant part: "What would be the victim's motivation to lie? . . . That would mean that this victim made a complaint, went to the hospital, subjected herself to a sex kit that took . . . hours, had to have her hair pulled, her pubic hair pulled. Swabs were taken. She had to come to the state's attorney's office. She had to testify on the [witness] stand. She had to subject herself to cross-examination. She had to subject herself to having her prior drug use disclosed, and she also had to have gotten her friend, Nina, to go along with this whole charade and come here and testify falsely also or she would have had to have been a really good actress because if you believe Nina, Nina said she was hysterical."

were playing cards and Atari in her apartment, and she put herself into this situation? She should have been sexually assaulted because she was with a guy she did not know his last name in the apartment? They have had several contacts in the past. [He has] been to her apartment before. I can't believe that defense counsel would claim that she put herself into this situation, that you should consider that in any way." The state contends that this rebuttal argument was made fairly in response to defense counsel's closing argument, which attempted to place blame on the victim.

We agree with the state that defense counsel invited the state's response.[6] See *State* v. *Jefferson*, supra, 67 Conn. App. 267. Viewed in the context of the entire trial, we cannot conclude that the defendant was clearly deprived of a fair trial by the prosecutor's statement.

4

Facts Not in Evidence

The defendant argues that the prosecutor introduced facts that were not in evidence because the hospital did not perform tests to confirm alcohol consumption. Specifically, he claims that the prosecutor improperly referred to medical records that were in evidence and stated, "We didn't touch upon this too much during the case, but you are free to go through them and gather from them anything that you wish. I'd like to point out to you that [the victim's] version to the hospital staff

---

[6] Defense counsel argued in relevant part: "What was she thinking at 7 to 7:30, a man she didn't know his last name who she met on the street a number of months prior who had been up to her apartment? She didn't know his last name? If you believe the defendant, he had sex with her on prior occasions. It's verified practically by inspector [Stephen] Looby's comments. What is she doing with a man she doesn't know his last name, she's drinking with him? If you believe my client's testimony, they are smoking pot. She is smoking crack from 7 until after midnight. . . . Seven to 7:30, how did she get herself into this position with a man she didn't know his last name, to drink and smoke? Bad judgment."

is consistent with what—her version of what happened here is consistent with the version she relayed to us here on the stand. . . . Now, the defendant portrays the victim as high on crack, yet the hospital records, the police observations and Nina's observations indicate no signs of intoxication." We are not persuaded.

Our review of the record reveals that the hospital report was admitted into evidence and did not contain any indication that the victim was under the influence of drugs or alcohol at the time of her physical examination. A prosecutor is entitled to comment on reasonable inferences to be drawn from the evidence. A jury reasonably could conclude that if the victim displayed any symptoms of intoxication, they would have been included in the medical report. Moreover, in this case, both the prosecutor and defense counsel made clear in their closing arguments that the hospital did not conduct toxicology tests, and the court instructed the jury that arguments made by counsel are not evidence. We therefore conclude that the defendant has failed to show that a constitutional violation clearly exists.

## II

The defendant next claims that the court improperly admitted the testimony of inspector Stephen Looby on collateral matters and in violation of the defendant's sixth amendment right to counsel. We disagree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where

there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Evidence is considered relevant when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . . Furthermore, relevant evidence has a logical tendency to aid the trier in the determination of an issue. . . . A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, 62 Conn. App. 743, 757–58, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001).

"The extent to which rebuttal testimony may be carried is within the discretion of the trial court. . . . As a general rule, extrinsic evidence of a prior inconsistent statement may not be admitted to impeach the testimony of a witness on a collateral matter. . . . Thus, on cross-examination, a witness' answer regarding a collateral matter is conclusive and cannot be contradicted later by extrinsic evidence. . . . Extrinsic evidence of a prior inconsistent statement may be admitted, however, to impeach a witness' testimony on a noncollateral matter. . . . A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party." (Citations omitted; internal quotation marks omitted.) *State* v. *Moran*, 53 Conn. App. 406, 413–14, 731 A.2d 758, cert. denied, 249 Conn. 925, 733 A.2d 849 (1999). "Evidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant. . . . It may be . . . the very key to an intelligent appraisal of the testimony of the [witness]." (Internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993), on appeal after remand,

234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).

The state questioned Looby regarding statements that the defendant made to him when the defendant appeared to have a blood sample drawn for DNA testing. When it appeared to Looby, on the day that the procedure was scheduled to take place, that the defendant's counsel was delayed, he asked the defendant if he wanted to proceed with the procedure without his attorney present. The defendant requested to reschedule, and the procedure took place on another date with the defendant's attorney present. At trial, the state asked the defendant if he had told Looby that he wanted to speak to his attorney "because [he was] afraid the condom found might have been from two weeks prior." The defendant responded in the negative. He further denied on direct examination that he changed his version of events after discovering that a condom had been found by police in the toilet at the victim's apartment. The state then elicited testimony from Looby that the defendant responded that he wanted to speak to his attorney because "the condom might have been one that was left there by him from two weeks prior when he had consensual sex." The state contends that the question went to the defendant's credibility. We agree.

The central question before the jury was the relative credibility of the victim and the defendant. The defendant made a statement to police, which the court admitted into evidence, stating that he did not have sex with the victim on the night of the rape. He then testified that he did have sex with her, but on an occasion two weeks prior to the alleged rape. Testimony further established that a discarded condom containing the defendant's semen was in fact found in the victim's toilet on the night of the rape. While Looby's testimony went to the issue of the defendant's credibility, it also

went to a material issue in the case, whether the defendant and the victim had consensual sex. We therefore conclude that the court did not abuse its discretion in finding that Looby's testimony did not concern a collateral matter.

We are also not persuaded that Looby's testimony was admitted in violation of the defendant's sixth amendment right to counsel. As with many of his claims, the defendant failed to preserve it for appeal[7] and, therefore, seeks *Golding* review.

"[T]he Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. . . . [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. . . . However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *State* v. *Piorkowski*, 243 Conn. 205, 224–25, 700 A.2d 1146 (1997), citing *Maine* v. *Moulton*, 474 U.S. 159, 176, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985).

---

[7] We note the proper means of challenging the admissibility of the evidence is by a motion to suppress. See Practice Book § 41-12.

We cannot conclude that the court infringed on the defendant's sixth amendment right to counsel by its admission of Looby's statement. The defendant bears the burden of showing that his statement to Looby was made in the context of a custodial interrogation. See, e.g., *State* v. *Vitale*, 197 Conn. 396, 409, 497 A.2d 956 (1985). "Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way . . . . Before one suspected of the commission of a crime is entitled to . . . [*Miranda*[8] warnings], two conditions are required: the suspect must be in the custody of law enforcement officials . . . and the suspect must be subjected to interrogation." (Citations omitted.) Id., 411. "Every question posed to a defendant in custody is not equivalent to an interrogation." *State* v. *Dixon*, 25 Conn. App. 3, 8, 592 A.2d 406 (1991).

The question posed to the defendant by Looby was simply whether the defendant wanted to proceed with the blood drawing or wait for his attorney—an entirely ministerial question. That is not the kind of question that constitutes an interrogation. Rather, it is "characterized by brevity, neutrality and an absence of intent to elicit a confession or admission." Id., 9. We therefore conclude that the defendant has not met his burden of showing that a constitutional violation clearly exists and that he was deprived of a fair trial.

Finally, the defendant claims that the state's questioning of Looby put before the jury the defendant's exercise of his right to counsel and right to remain silent and, therefore, violated his due process rights. See *Doyle* v. *Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *State* v. *Daugaard*, 231 Conn. 195, 210–11, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099,

---

[8] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). The defendant has not satisfied the third prong of *Golding* necessary for our review of his claim.

"Ordinarily, evidence of a defendant's postarrest and post-*Miranda* silence is constitutionally impermissible under the due process clause of the fourteenth amendment. *Doyle* v. *Ohio*, [supra, 426 U.S. 610]. A *Doyle* violation also encompasses a prosecutor's comment upon a defendant's statement requesting an attorney. . . . With respect to post-*Miranda* warning . . . silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." (Citation omitted; internal quotation marks omitted.) *State* v. *Berube*, 256 Conn. 742, 750–51, 775 A.2d 966 (2001).

We conclude that Looby's testimony that the defendant did not want his blood drawn until his attorney could be present does not constitute improper evidence of silence. The testimony was not elicited for the purpose of commenting on the defendant's exercise of his right to remain silent or his right to counsel. Rather, it was necessary to show "the investigative effort made by the police and the sequence of events as they unfolded . . . ." (Internal quotation marks omitted.) *State* v. *Rose*, 41 Conn. App. 701, 712, 679 A.2d 19, cert. denied, 239 Conn. 906, 682 A.2d 1011 (1996).

III

The defendant's next claim is that the court deprived him of a fair trial because the court did not appear impartial. Specifically, he argues that the court assumed a position of advocacy when it intervened during defense counsel's cross-examination of the victim and suggested that it would sustain an objection by the prosecution if one were made on relevancy grounds. Because the defendant did not preserve this claim at

trial, we must determine whether he can prevail under *State* v. *Golding,* supra, 213 Conn. 239–40.

"The principles guiding a trial judge in conducting a criminal trial are well established. Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so." (Internal quotation marks omitted.) *State* v. *Solek,* 66 Conn. App. 72, 89–90, 783 A.2d 1123, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). "Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts." (Internal quotation marks omitted.) *State* v. *Robertson,* 254 Conn. 739, 770, 760 A.2d 82 (2000).

"This court has said that [j]udges in this state . . . are given wide latitude to comment fairly and reasonably upon evidence received at trial, but the court must refrain from making improper remarks which are indicative of favor or condemnation . . . . Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must always be cautious and circumspect in his language and conduct." (Internal quotation marks omitted.) *State* v. *Pharr,* 44 Conn. App. 561, 570–71, 691 A.2d 1081 (1997). "Any claim that the trial judge crossed the line between impartiality and

advocacy is subject to harmless error analysis." *State* v. *Burke,* 51 Conn. App. 328, 335, 723 A.2d 327 (1998), cert. denied, 248 Conn. 901, 732 A.2d 177 (1999).

The defendant has not demonstrated that his claim implicates his due process right to a fair trial and, as a result, fails to satisfy the second prong of *Golding.* The court properly interjected to ask defense counsel to justify his inquiry into the victim's employment and financial status. Just as a judge is not required to remain silent when a " 'case is not being presented intelligibly to the jury' "; *State* v. *Robertson,* supra, 254 Conn. 770; here, the judge was not required to remain silent where irrelevant, prejudicial evidence was elicited. We therefore decline to review the defendant's claim.

## IV

The defendant finally claims that the court considered improper factors when sentencing him and thereby deprived him of due process. Specifically, he claims that the court improperly considered defense counsel's behavior during the trial, having concluded that defense counsel's cross-examination of the victim was tantamount to an assault. The defendant, having failed to preserve his claim, seeks, alternatively, *Golding*[9] or plain error review.[10] We decline to review his claim under *Golding* and the plain error doctrine.

---

[9] See footnote 3.

[10] See Practice Book § 60-5. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . Moreover, because the claim raised here is nonconstitutional, the defendant must demonstrate that the trial court's improper action likely affected the result of his trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Solman,* 67 Conn. App. 235, 239–40, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002).

"As a general matter, a trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters. On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused." *State* v. *Kelly*, 256 Conn. 23, 80–81, 770 A.2d 908 (2001). "Due process requires, however, that information be considered only if it has some minimal indicium of reliability. . . . A court should refrain from comments that find no basis in the record. Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence." (Internal quotation marks omitted.) *State* v. *Connelly*, 46 Conn. App. 486, 505, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

In this case, the court sentenced the defendant to fifteen years imprisonment, suspended after ten years, with five years probation with conditions. The court imposed a sentence within the requirements of § 53a-70 (a) (1). The record reveals that the court considered the evidence and concluded that "[t]he evidence was overwhelming that the defendant was guilty of sexual assault beyond a reasonable doubt. . . ." The court further stated that "[n]ext to murder, rape is society's most heinous crime. It is a denigration of womanhood. It leaves permanent scars and damages. Sexual assault is a pestilence of virulent proportions. Assaulters, predators in this community, must understand that justice for sexual assault requires substantial sanctions." We therefore cannot conclude that the defendant's claim warrants either *Golding* or plain error review.

The judgment is affirmed.

In this opinion the other judges concurred.